IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| *In re* HRN GROUP, LLC,<br><br>     Debtor.<br><br>HRN GROUP, LLC,<br><br>     Appellant,<br><br>            v.<br><br>WILMINGTON SAVINGS FUND,<br><br>     Appellee. | Bankruptcy Case No.<br>18-63282-WLH<br><br><br><br>Civil Action No.<br>1:19-cv-05011-SDG |

## <u>OPINION AND ORDER</u>

HRN Group, LLC (HRN) appeals from the order of the Northern District of Georgia Bankruptcy Court [ECF 1] modifying the automatic stay as to certain real property in which Appellee Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A (Wilmington) purportedly holds an interest. This Court denied HRN's request for a stay, and Wilmington has now apparently foreclosed on the property. Any such foreclosure sale renders this appeal moot. In any event, there was no abuse of discretion in the bankruptcy court's order.

# I.   BACKGROUND

## a.   Factual History

The record on appeal shows the following: The real property at issue is located at 6236 Katelyn Park, Lithonia, Georgia (the Property).[1] The Property secured a mortgage taken out by Doris M. Ross.[2] On June 23, 2005, Doris executed a note (the Note) in favor of the lender, BSM Financial, L.P. dba Brokersource.[3] The same day, Doris executed a security deed (Deed) securing the Note.[4] Mortgage Electronic Registration Systems, Inc. (MERS) was the grantee under the Deed and the nominee for Brokersource.[5] In the Deed, Doris granted and conveyed the Property to MERS (as Brokersouce's nominee).[6]

MERS subsequently sold and assigned the Deed (including the Property) and Note to BAC Home Loans Servicing, LP (BAC).[7] BAC later merged with Bank

---

[1]   ECF 1-1, at 5–6.

[2]   ECF 3-1, at 117–20, 122–32.

Doris M. Ross was the mortgagor. [*Id.*] Danitta Ross-Morton is a principal of HRN. [*Id.* at 48.] For clarity, this Order uses the given name of each to distinguish between them.

[3]   *Id.* at 117–20.

[4]   *Id.* at 122–32.

[5]   *Id.* at 122.

[6]   *Id.* at 123.

[7]   *Id.* at 194.

of America (BoA), and BoA acquired the Deed and Note.[8] In May 2013, BoA sold the Deed and the Property to Federal Home Loan Bank of Boston (FHLBB).[9] Later that year, FHLBB sold the Deed and the Property back to BoA.[10] In 2016, BoA conveyed the Deed and interest in the Property and Note to the Secretary of Housing and Urban Development (HUD).[11] Later in 2016, HUD transferred the Deed and interest in the Property and Note to Wilmington.[12] Carrington Mortgage Services, LLC (Carrington), as the attorney-in-fact for HUD, executed the assignment to Wilmington.[13] On the assignment are the handwritten words "Return To," below which is the stamped name and address of Rubin Lublin.[14] It is not clear from the record when this information was placed on the assignment or with what entity Lublin was affiliated. A corrective assignment was executed and recorded in July 2019.[15]

---

[8]   *Id.* at 196.

[9]   *Id.* at 198.

[10]   *Id.* at 200.

[11]   *Id.* at 202.

[12]   *Id.* at 203.

[13]   *Id.*

[14]   *Id.*

[15]   *Id.* at 204.

### b.    Procedural History

On August 7, 2018, HRN filed a voluntary petition for Chapter 7 bankruptcy.[16] On its Schedule D (Creditors Who Have Claims Secured by Property), HRN identified Wilmington, Carrington, and Lublin as having claims against the Property.[17] HRN also indicated that the value of the Property was $187,000, and that Carrington had a claim of $340,000.[18] The record does not indicate what HRN's interest in the Property was or how any such interest was obtained.[19]

On September 26, 2019, Wilmington filed a motion pursuant to 18 U.S.C. § 362(d) for relief from the automatic bankruptcy stay.[20] Wilmington asserted that it is "the holder or the servicer of a loan" secured by the Property.[21] Although it was not certain of HRN's exact interest, Wilmington noted that HRN listed the Property on its bankruptcy schedules.[22] At that point, the loan was alleged to be

---

[16]    ECF 1-1, at 8–20. *See generally* Bankr. N.D. Ga. Case No. 18-bk-63282 (Bankr.), ECF 1.

[17]    Bankr. ECF 10, at 7, 8.

[18]    *Id.* at 7.

[19]    *See generally* ECF 3.

[20]    Bankr. ECF 76.

[21]    *Id.* ¶ 2.

[22]    *Id.* ¶¶ 2–3.

126 payments in arrears and Wilmington's total claim in excess of $340,000.[23] Wilmington argued that its interest in the Property was not adequately protected because there "may be little or no value in the [P]roperty over the amount owed" on it.[24]

On October 17, 2019, the bankruptcy court held a hearing on Wilmington's motion.[25] HRN asserted that Wilmington did not have legal standing to foreclose on the Property.[26] The bankruptcy court noted that the Trustee had "found no net value" in the Property and that the Property was not something that needed to be preserved in the bankruptcy estate.[27] Therefore, the court granted Wilmington's motion and modified the automatic stay, "allow[ing] the parties to continue their litigation elsewhere."[28] On October 23, the bankruptcy court entered the written order modifying the stay to permit Wilmington to institute and complete foreclosure proceedings in connection with the Property.[29] On November 4, HRN

---

[23]   *Id.* ¶¶ 4–5.

[24]   *Id.* ¶ 6.

[25]   ECF 3-1, at 43–57.

[26]   *Id.* at 49.

[27]   *Id.* at 50.

[28]   *Id. See also* ECF 1-1, at 5–7 (order granting motion).

[29]   ECF 1-1, at 5–7.

filed its notice of appeal.[30] It did not seek a stay pending appeal from the bankruptcy court.[31]

On October 5, 2020, prior to the completion of briefing on the appeal, HRN filed in this Court a motion for temporary restraining order and preliminary injunction to stay Wilmington's scheduled foreclosure sale on the Property, which had been set for the following day (October 6).[32] On October 6, the Court held a hearing on the injunctive relief motion, at which both HRN and Wilmington were represented.[33] The Court denied the motion.[34] According to HRN, Wilmington has now (illegally in HRN's view) conducted the foreclosure sale.[35]

---

[30]   ECF 1, at 1.

[31]   *See generally* Docket; Bankr. Docket.

HRN suggests that there was a "Stay of all Foreclosure Sales" in place in this Court pending HRN's multiple appeals from the bankruptcy court. [ECF 18, at 11; ECF 23, at 9.] As a review of the docket shows, this assertion is not correct. No stay separate from the automatic bankruptcy stay was ever entered by this Court or the bankruptcy court.

[32]   ECF 20.

[33]   ECF 21.

[34]   *Id.*

[35]   ECF 23, at 5.

On August 25, 2020, the Court issued a briefing schedule to the parties.[36]

HRN untimely submitted its appellant's brief on September 25, 2020.[37]

Wilmington filed its appellee's brief on October 26.[38] HRN untimely filed its reply

brief on November 10.[39] Oral argument on the issues presented is unnecessary and

the appeal is now ripe for consideration.

## II.   SCOPE OF APPEAL

This Court has jurisdiction over HRN's appeal under 28 U.S.C. 158(a), which

provides that district courts may hear appeals from final judgments, orders, and

decrees of bankruptcy judges. Under Federal Rule of Bankruptcy Procedure

---

[36]   ECF 16.

[37]   ECF 18.

Under the briefing schedule, HRN's brief was due on September 24, 2020. [ECF 16.] However, its filing was not completed until September 25. [ECF 18.] Wilmington did not object to the lateness of HRN's brief. [*See generally* ECF 22.]

[38]   ECF 22.

[39]   ECF 23.

Under the briefing schedule, HRN's reply was due 14 days after Wilmington's response—on November 9, 2020. [ECF 16.] However, HRN's filing was not completed until November 10. [ECF 23.] Wilmington did not object to the lateness of HRN's brief. The Court also notes that, as reflected in the certificates of compliance for HRN's opening and reply briefs, the documents do not comply with the typeface requirements of the Court's Local Rules or Fed. R. App. P. 32(a)(5)(A).

***Counsel for HRN is cautioned that future late filings made without leave and filings that do not comply with the Court's Local Rules will not be considered***.

8003(a)(3), a notice of appeal must—among other things—be accompanied by the order that is being appealed. Further, the notice of appeal must be filed within 14 days after entry of the order from which appeal is taken. Fed. R. Bankr. P. 8002(a)(1). *See also* 28 U.S.C. § 158(c)(2).[40]

The only order included with the notice of appeal was the bankruptcy court's October 23, 2019 order granting Wilmington relief from the automatic stay.[41] Wilmington was the only movant on the underlying motion.[42] Wilmington is the only appellee identified in the notice of appeal.[43] Despite this, HRN's Appellant's Brief also identifies "AMIP Management, et.al [sic]" as appellees.[44] In its reply brief, HRN also contends that the conduct of counsel for Wilmington

---

[40]  Danitta filed the notice of appeal on behalf of HRN. Corporations, however, cannot proceed *pro se*. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); LR 83.1(E)(2)(b)(I), NDGa. On July 21, 2020, this Court directed HRN to obtain counsel [ECF 12]. Counsel has now appeared on behalf of HRN [ECF 14; ECF 15]. The Court therefore treats the notice of appeal as having been timely filed even though the filing was not made by an attorney. *Davis v. Shepard (In re Strickland & Davis Int'l, Inc.)*, 612 F. App'x 971, 976 (11th Cir. 2015) ("[O]ur binding precedent instructs that a court facing such a circumstance should afford a corporation the opportunity to obtain counsel *before* dismissing its appeal.") (footnote omitted) (citations omitted).

[41]  ECF 1-1, at 5–7.

[42]  Bankr. ECF 76.

[43]  ECF 1-1, at 2.

[44]  *See generally* ECF 18, at 1–2, 6.

(Aldridge Pite) is at issue.[45] Neither AMIP Management nor Aldridge Pite is a party to this appeal.[46]

Moreover, the vast majority of HRN's opening brief appears unrelated to the order that is actually the subject of this appeal.[47] For instance, HRN's statement of issues, among other things, (1) challenges the propriety of a separate bankruptcy court order staying pretrial deadlines in an adversary proceeding, (2) seeks rescission of *all* orders entered by the bankruptcy court, and (3) insists that "Appellees should be compelled to fulfill" HRN's discovery requests propounded under Georgia state law.[48] HRN also makes several arguments concerning proceedings and orders issued in an action in the Bankruptcy Court for the Eastern District of New York (the New York Court).[49]

---

[45]   ECF 23, at 7.

[46]   ECF 1.

[47]   *See generally* ECF 18.

The Court notes that HRN has appealed from three other orders of the bankruptcy court. Case Nos. 1:20-cv-0699-SDG, 1:20-cv-0702-SDG, 1:20-cv-0704-SDG. To the extent HRN's arguments may relate only to the matters at issue in those appeals, the Court expresses no opinion on them here.

[48]   ECF 18, at 6–7.

[49]   *See, e.g., id.* at 9–13; ECF 23, at 7–10.

This Court, however, will only consider the sole issue raised in the notice of appeal: Did the bankruptcy court abuse its discretion in modifying the automatic stay with regard to the Property, permitting Wilmington to institute foreclosure proceedings? Orders entered by the New York Court are not part of this appeal or appropriately considered by this Court.

## III.    STANDARD OF REVIEW

In a bankruptcy appeal, this Court "functions as an appellate court" and is not authorized "to make independent factual findings." *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1383–84 (11th Cir. 1990) (citations omitted). It reviews determinations of law *de novo* and applies clearly erroneous review to factual determinations made by the bankruptcy court. *Id.* at 1383. *See also Graupner v Nuvell Credit Corp. (In re Graupner)*, 537 F.3d 1295, 1299 (11th Cir. 2008) ("The factual findings of the bankruptcy court cannot be set aside unless they are clearly erroneous; however, conclusions of law made by either the bankruptcy court or the district court are subject to *de novo* review.") (citing *Sublett*, 895 F.2d at 1383). The bankruptcy court's grant of a motion for relief from the automatic stay is reviewed for abuse of discretion. *Barclays-AM/Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.)*, 871 F.2d 1023, 1026 (11th Cir. 1989) ("A decision to lift the stay is discretionary with the bankruptcy judge, and may be reversed only

upon a showing of abuse of discretion.") (citations omitted). *See also Bagwell v. Bank of Am., N.A. (In re Bagwell)*, 741 F. App'x 755, 758 (11th Cir. 2018) ("An abuse of discretion occurs when a court uses an incorrect legal standard, applies the law in an unreasonable or incorrect manner, misconstrues its proper role, follows improper procedures in making a determination, or makes clearly erroneous findings of fact.") (citation omitted).

## IV.   DISCUSSION

### a.   HRN's appeal was rendered moot by the foreclosure sale.

Before addressing the substance of HRN's appeal, this Court must determine whether it has jurisdiction in the first instance. *Meus v. Weatherford (In re Meus)*, 718 F. App'x 937, 940 (11th Cir. 2018) ("[W]e are obligated to review both our jurisdiction and the district court's jurisdiction before addressing the merits of the appeal.") (citations omitted). Here, the pertinent question is whether HRN's appeal has been mooted by the foreclosure sale. "[A]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* at 941 (alteration in original) (internal quotation marks omitted) (citations omitted). Under Eleventh Circuit case law, "an appeal from an order granting relief from the automatic stay becomes moot once the creditor acts upon the relief from stay judgment and forecloses upon the property at issue."

*Ware v. Deutsche Bank (In re Ware)*, 562 F. App'x 850, 851 (11th Cir. 2014) (citation omitted).

According to HRN, the foreclosure sale took place on October 6, 2020.[50] Despite the fact that Wilmington's brief was filed on October 26, 2020, there is nothing in it suggesting the sale had already happened.[51] It was not until HRN filed its reply on November 10, 2020 that any party indicated the foreclosure sale had already taken place on October 6 as scheduled.[52] The parties' lack of clarity on this point is troubling—particularly because it affects this Court's jurisdiction to hear the appeal. Since a completed sale would render HRN's appeal moot, the statements in HRN's reply brief indicating the foreclosure sale has already taken place are against its asserted interests in this action. Accordingly, the Court takes them at face value and proceeds based on HRN's admission that the foreclosure sale of the Property has been completed.

> When a debtor fails to obtain a stay pending appeal of an order granting a creditor relief from the automatic stay and allowing that creditor to foreclose on the debtor's property, a completed foreclosure and sale of the property will render any appeal moot, as this Court is powerless to rescind the completed sale on appeal.

---

[50]   ECF 23, at 5.

[51]   *See generally* ECF 22.

[52]   ECF 23, at 5, 15–16, 23.

*Meus*, 718 F. App'x at 941 (footnote omitted) (citations omitted). *See also Sewanee Land, Coal & Cattle, Inc. v. Lamb (In re Sewanee Land, Coal & Cattle, Inc.)*, 735 F.2d 1294, 1295 (11th Cir. 1984) ("In some situations, failure to obtain a stay pending appeal will render the case moot.").

That is precisely the situation presented here. HRN did not seek a stay from the bankruptcy court of the order on appeal. Fed. R. Bankr. P. 8007(a)(1)(A) ("Ordinarily, a party must move first in the bankruptcy court for the following relief . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal . . . [or] an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."). This Court denied HRN's motion to enjoin the sale.[53] As a result, Wilmington was not prohibited from foreclosing on the Property and (assuming the sale has actually taken place) this Court lacks jurisdiction to consider the merits of HRN's appeal. *Meus*, 718 F. App'x at 941. *See also Lashley v. First Nat'l Bank of Live Oak (In re Lashley)*, 825 F.2d 362, 364 (11th Cir. 1987) ("When a debtor does not obtain a stay pending appeal of a bankruptcy court or district court order setting aside an automatic stay and allowing a creditor to foreclose on property the subsequent foreclosure renders moot any appeal.")

---

[53]   ECF 21.

(citations omitted); *Bleaufontaine, Inc. v. Roland Int'l (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1389–90 (5th Cir. Unit B Jan. 1981) (discussing inability of a district court sitting in appellate review of a bankruptcy court to grant effective relief under former Bankruptcy Rule 805 from a lifting of the automatic stay after a sale has been consummated). *See also id.* at 1390 n.14 ("An appellant is not obliged to seek a stay pending appeal. The only consequence of failing to obtain a stay is that the prevailing party may treat the judgment or order of the referee as final, notwithstanding an appeal is pending. But as a practical matter, situations will arise where what may be done under the order by the prevailing party is beyond the power of the district judge to undo by reversal of the order. In such a case, seeking a stay becomes mandatory. Otherwise, the appeal may be dismissed as moot.") (citation omitted).

HRN's appeal is therefore **DISMISSED as MOOT**.

**b.    There was no abuse of discretion in the bankruptcy court's order modifying the automatic stay.**

There is nothing in the record concerning the foreclosure sale and, as discussed above, the parties' submissions lack complete clarity on this issue. Accordingly, while the Court believes a dismissal as moot is appropriate, it proceeds to address the substance of HRN's appeal in the event the foreclosure sale has not yet occurred. Even then, however, HRN's arguments would be

unavailing. The bankruptcy court properly lifted the automatic stay consistent with the applicable law and this Court would affirm the October 23, 2019 order in any event.

To the extent the Court is able to distill HRN's arguments on appeal, it contends that Wilmington does not have standing to enforce an interest in the bankruptcy estate because it is not a true creditor.[54] HRN also asserts that the Trustee concluded Wilmington is an "unsecured claimant" rather than a creditor.[55]

Wilmington argues that it is a party in interest and its claim exceeds the value of the Property.[56] It also asserts that the Trustee indicated the Property was of no value or benefit to the estate.[57] Accordingly, Wilmington contends there was no error in the bankruptcy court's order providing it relief from the automatic stay.[58]

---

[54]  *See, e.g.*, ECF 18, at 7.

[55]  *Id.* at 17, 22–23.

[56]  ECF 22, at 13 (citing Bankr. ECF 10).

[57]  *Id.* (citing Bankr. D.E. Jan 8, 2019).

[58]  ECF 22, at 15.

>   ### i.   There was no error in the bankruptcy court's conclusion that Wilmington was entitled to seek relief from the automatic stay.

Applying *de novo* review to the legal question of standing, the Court concludes that Wilmington is a party in interest and therefore had standing to seek relief from the automatic stay. *Basson v. Fed. Nat'l Mortg. Ass'n (In re Basson)*, 713 F. App'x 987, 988 (11th Cir. 2018) (to have standing in a bankruptcy case, a party must be a "party in interest"); *Walden v. Walker (In re Walker)*, 515 F.3d 1204, 1212 (11th Cir. 2008) (concluding that courts have generally held "to have standing in a bankruptcy proceeding, the party must be a 'party in interest.'") (citation omitted). *See also Westwood Cmty. Two Ass'n, Inc. v. Barbee (In re Westwood Cmty. Two Ass'n, Inc.)*, 293 F.3d 1332, 1335 (11th Cir. 2002)) (applying "person aggrieved" rule for standing to appeal a bankruptcy court order).[59]

---

[59] Further, HRN does not clearly have standing since the bankruptcy court concluded it lacked equity in the Property. In fact, there is nothing apparent on the face of the record demonstrating that HRN even has a valid interest in the Property—its interest is reflected only on the self-reported schedules filed with the bankruptcy court. Bankr. ECF 10, at 7, 8. "Courts have widely agreed that the person aggrieved doctrine limits standing to appeal a bankruptcy court order to those individuals *who have a financial stake in the order being appealed*.") *Westwood*, 293 F.3d at 1335 (emphasis added) (citations omitted). If HRN has no financial stake in the Property, it has no standing to challenge the bankruptcy court's order.

Under 11 U.S.C. § 362(d), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization.

Thus, the automatic stay must be modified or lifted for cause when there is not adequate protection for an interest in property. *Dixie Broad.*, 871 F.2d at 1026.

The party requesting relief from the stay has the burden of proof concerning the debtor's equity in the relevant property. 11 U.S.C. § 362(g)(1). The party opposing such relief has the burden with regard to all other issues. *Id.* § 362(g)(2). *See also Dallas v. S.A.G., Inc.*, 836 F.2d 1307, 1309 (11th Cir. 1988) (stating that, when a party seeks relief from the automatic stay, "the moving party need only prove that the debtor lacks equity in the property in which the movant claims a perfected security interest. The party opposing the relief has the burden of proof on all other issues.").

### 1.    Wilmington is a party in interest.

A "party in interest" includes a creditor. *Basson*, 713 F. App'x at 988. A "creditor," in turn, is "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). *See also Basson*, 713 F. App'x at 988. A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). "[A] party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *Everbank v Hayden (In re Hayden)*, No. 13-57281-MGD, 2013 WL 3776296, at *1 (Bankr. N.D. Ga. June 25, 2013) (citing *In re Veal*, 450 B.R. 897, 914–15 (B.A.P. 9th Cir. 2011)). It is thus irrelevant whether Wilmington is called an "unsecured claimant" as HRN contends or a "creditor," since it has a colorable right to payment under the Deed and Note.[60] *Basson*, 713 F. App'x at 988 (concluding Fannie Mae had a "claim" against the debtor, which made it a "creditor" based on copies of the note, deed, and assignments in the record).

---

[60]    *See, e.g.*, ECF 18, at 17.

Based on the record, there was no clear error in the bankruptcy court's factual determination that Wilmington was a party in interest entitled to relief from the stay. Wilmington (which had the burden of proof on this issue) demonstrated that (1) it lacked adequate protection for its interest in the Property and (2) HRN did not have equity in the Property and the Property was not necessary to an effective reorganization.[61] Since HRN had no equity, the bankruptcy court was entitled to provide Wilmington relief from the stay under 11 U.S.C. § 362(d)(2)(A). Further, because the value of the Property was less than the total amount of Wilmington's claim, Wilmington was entitled to relief from the stay "for cause" under 11 U.S.C. § 362(d)(1). *Bagwell*, 741 F. App'x at 759 ("Section 362(d)(2) requires a court to lift a stay affecting a debtor's property if 'the debtor does not have an equity' in the property and the property 'is not necessary to an effective reorganization.' A creditor who shows those two elements are met is entitled to relief.") (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984)).

As the bankruptcy court explained during the hearing on Wilmington's motion to lift the stay,

---

[61] *See generally* Bankr. ECF 76, at 6–26.

> in a Chapter 7 [bankruptcy], the purpose is for the trustee to collect the assets that have any value, sell them if they have value, and distribute the money. It is not the chapter which allows the debtor to save their home or save a piece of property, because there's no mechanism for doing that.
>
> [The trustee] has already filed his report of no-distribution, abandoning the assets, meaning he's found no net value in the asset. So although there may be disputes between the parties about what should happen next . . . the [P]roperty is not something that needs to be preserved in the bankruptcy estate.
>
> So I will lift the stay and allow the parties to continue their litigation elsewhere.[62]

The record evidence before the bankruptcy court supports the conclusion that Wilmington was a "party in interest." In its bankruptcy schedules, HRN identified Wilmington as being a secured creditor with a lien on the Property.[63] The Deed, Note, and various assignments indicate that Wilmington has a claim that is secured by the Property.[64] That interest arose before HRN filed its bankruptcy petition.[65] This was sufficient to establish that Wilmington had a colorable claim against the Property and there was no clear factual error in the

---

[62]   ECF 3-1, at 50.

[63]   Bankr. ECF 10, at 7–8.

[64]   *See generally* ECF 3-1, at 117–204.

[65]   *Id.*

bankruptcy court's decision in this regard. *Hayden*, 2013 WL 3776296, at *1. As the bankruptcy court indicated, nothing in its order prevented HRN from challenging Wilmington's right to foreclose in the proper venue.[66] *Id.* ("Debtor asserts that the Court ruled, by implication, that Everbank was the proper party to foreclose on Debtor's property. The Court's ruling did not make any such determination. No determination is necessary in a relief from stay motion in a Chapter 7 case where the estate has no interest in the property.").

The bankruptcy court did not abuse its discretion in modifying the stay to permit the foreclosure sale.

### c.    HRN was not denied due process.

There was no denial of due process to HRN resulting from the bankruptcy court's order modifying the automatic stay.[67] "To satisfy due process, an individual must receive notice and have an opportunity to be heard." *McSmith v. Bank of Am., N.A. (In re McSmith)*, 671 F. App'x 775, 776 (11th Cir. 2016) (upholding

---

[66]   ECF 3, at 50.

[67]   HRN also argues that the alleged denial of due process deprived the "courts" of "any jurisdiction that they may have had to rule." ECF 18, at 16. *See also id.* at 22–23 (asserting denial of substantive due process rights because of bankruptcy court's order staying discovery deadlines in certain adversary proceedings). HRN cites no law in support of this remarkable statement. This Court, however, need not address that point since it concludes there was no denial of due process.

district court's affirmance of a bankruptcy court order granting a motion to lift the automatic stay and permitting a foreclosure sale of a Chapter 13 debtor's property where the debtor had received notice of the motion and was given an opportunity to be heard at a hearing) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Here, HRN was clearly provided notice of the motion, having filed an "Affidavit of Opposition to Motion for Relief from Automatic Stay" *and* been directly mailed a copy of the motion.[68] The bankruptcy court held a hearing on October 17, 2019 on Wilmington's motion, as required under 11 U.S.C. § 362(d). HRN appeared at that hearing and does not contend that it lacked notice.[69] Despite the fact that HRN was not represented by counsel during the hearing, the bankruptcy judge permitted Danitta to speak on the company's behalf anyway.[70]

---

[68]   Bankr. ECF 80; Bankr. ECF 76, at 27. A copy of the motion was also served by email on HRN's then-counsel. Bankr. ECF 76, at 27.

[69]   ECF 3-1, 43–57; ECF 18.

[70]   HRN's then-counsel had filed a motion to withdraw, which was granted at the start of the hearing. [ECF 3, at 47–48.] As a result, the bankruptcy court permitted Danitta to present her objections on behalf of HRN at the hearing. [*Id*. at 48–49.] ("So, Ms. Morton, I know we started this case many months ago with the issue of a corporation that has to be represented by counsel in order to participate. But I'll—given the circumstances of today, I'll hear from you briefly in whatever opposition you have to the motion."). HRN was thus well aware of its obligation to be represented by counsel and has not argued in this appeal that it was denied due process because it was not represented by counsel at the October 17, 2019 hearing.

**V.      CONCLUSION**

In short, the bankruptcy court did not abuse its discretion when it modified

the automatic stay to permit Wilmington to foreclose on the Property.

Accordingly, alternative to this appeal being dismissed as moot for the reasons

stated above, the bankruptcy court's October 23, 2019 Order is **AFFIRMED**.

The Clerk is **DIRECTED** to **DISMISS** this appeal and close the case.

**SO ORDERED** this the 13th day of November 2020.

_____
Steven D. Grimberg
United States District Court Judge